1  **WO**

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9  Michael H. Salman; Suzanne Salman,    )    CV 11-00646-PHX-FJM
                                         )
10              Plaintiffs,              )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    City of Phoenix; Claude Mattox; Unknown )
13  Mattox; Oscar Cortez; Unknown Cortez; )
    Frank Dancil; Unknown Dancil,        )
14                                       )
                Defendants.              )
15                                       )
                                         )
16  _____)

17       The court has before it defendants' motion to dismiss for lack of subject-matter

18  jurisdiction (doc. 22), plaintiffs' response (doc. 24), and defendants' reply (doc. 28).

19                                   **I**

20       Plaintiffs purchased their current residence in Phoenix, Arizona in 2005. Plaintiffs

21  are Christians who began inviting neighbors to their home for weekly bible studies and

22  prayer. In February 2007, plaintiffs were told by defendant Councilman Claude Mattox that

23  neighbors were concerned about plaintiffs' use of the property. Plaintiffs attended a meeting

24  with Mattox, their neighbors, and city officials. At the meeting plaintiffs were told that,

25  pursuant to city ordinances and codes, religious activity within a residence is considered

26  "Church Use," which is not permitted on plaintiff's property without the necessary permits.

27  As a result, plaintiffs were informed that bible studies were no longer allowed in either their

28  residence or the barn on their property.

In May 2007, plaintiffs submitted plans to construct a building they could use for bible studies and worship.  This application was withdrawn after Mattox moved for a change in the parking requirements for places of worship in December 2007.  Plaintiffs then filed for a building permit to erect a structure in their backyard in November 2008.  A permit was issued in 2009 after reassurance from plaintiffs that the structure "would not be used for a public place of worship," First Amended Complaint ("FAC") at 9, and the structure was built. Plaintiffs aver that the building was not advertised as a public place of worship.  Each week, about forty to fifty of plaintiffs' family and friends would gather for bible studies or worship.

On June 11, 2009, plaintiffs were served with a search warrant and city inspectors searched their property.  During the inspection, plaintiffs allege that Defendant Police Officer Oscar Cortez took a sign laying face down in the front yard that advertised dates and times for Christian worship and placed it against a tree.  As a result of the inspection, which revealed building and zoning violations, defendant City Inspector Frank Dancil issued a notice of violation to plaintiffs.

Plaintiff Michael Salman was ultimately convicted of sixty-seven building and zoning code violations in 2010 by the Phoenix Municipal Court. He is appealing his conviction.  In the meantime, plaintiffs continue to worship at their residence with family and friends. Defendant City of Phoenix filed charges against Suzanne Salman in January 2011 for violating the city's sign ordinance by placing a sign with biblical scripture in the plaintiffs' front yard.   Michael Salman was again charged with violating seven building codes on March 21, 2011.

Plaintiffs originally filed this action on April 4, 2011.  An amended complaint (the "FAC") was filed on April 14, 2011 (doc. 6).  The thirty-nine page FAC seeks injunctive and declaratory relief plus damages for seven counts pursuant to 42 U.S.C. § 1983 and state law: (1) violation of the right to free exercise of religion under the United States and Arizona Constitutions; (2) violation of the right to equal protection under the United States and Arizona Constitutions; (3) violation of free exercise of religion under the Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. § 2000cc; (4) violation of free exercise

1   of religion under the Arizona Freedom of Religious Exercise Act; (5) violation of the right

2   to due process under the United States and Arizona Constitutions; (6) civil conspiracy; and

3   (7) negligent supervision by defendant City of Phoenix.  This court dismissed the civil

4   conspiracy claim on August 5, 2011 (doc. 21).  Defendants move to dismiss all remaining

5   claims for lack of subject-matter jurisdiction.

6                                              **II**

7          Defendants argue that the court must abstain from adjudicating plaintiffs' federal

8   claims for injunctive and declaratory relief under Younger v. Harris, 401 U.S. 37, 91 S. Ct.

9   746 (1971).  The Younger doctrine instructs federal courts that, "[a]bsent 'extraordinary

10  circumstances', abstention in favor of state judicial proceedings is required if the state

11  proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the

12  plaintiff an adequate opportunity to litigate federal claims." Hirsh v. Justices of the Supreme

13  Court of the State of Cal., 67 F.3d 708, 712 (9th Cir. 1995).[1]

14         To determine whether a state proceeding is ongoing, we look at the status of the

15  proceedings "at the time the federal action was filed." Beltran v. State of Cal., 871 F.2d 777,

16  782 (9th Cir. 1988).  Plaintiffs acknowledge that at the time they filed this action, they were

17  appealing plaintiff Michael Salman's conviction for violating the building code.  Charges

18  were also pending against both plaintiffs for additional code violations.  Plaintiffs

19  nevertheless argue that these state proceedings are not ongoing, because they are not

20  requesting that their convictions for ordinance violations be overturned, but instead want "to

21  establish the existence of their constitutional rights and determine whether the ordinances and

22  building codes, as written, violate those rights." Response at 4-5.  But this is a distinction

23  without a difference.  Younger abstention applies  to cases on direct appeal.  See Dubinka

24  v. Judges of the Superior Court of the State of Cal. for the County of Los Angeles, 23 F.3d

25  218, 223 (9th Cir. 1994) (noting that Younger applies where a litigant "has not exhausted his

26

27         [1] Direct interference in a state proceeding is no longer required as a "threshold
    element" for Younger abstention.  Gilbertson v. Albright, 381 F.3d 965, 968-69 (9th Cir.
28  2004).

1  state appellate remedies," concluding that "even if [plaintiffs'] trials were completed at the

2  time of the district court's decision, the state court proceedings were still pending for

3  Younger abstention purposes").  And a declaration by this court that the building and zoning

4  ordinances plaintiffs were prosecuted under violate  their constitutional rights would result

5  in the same impermissible disruption of state proceedings that led the Supreme Court to

6  extend the application of Younger from injunctions to declaratory relief.   See Samuels v.

7  Mackell, 401 U.S. 66, 72, 91 S. Ct. 764, 767 (1971).  As in this case, the plaintiffs in Samuels

8  alleged that the state statute they were being prosecuted under violated their rights under the

9  First Amendment, and their due process and equal protection rights under the Fourteenth

10 Amendment.  Id. at 67, 91 S. Ct. at 765.  A declaration in this case that the City of Phoenix

11 ordinances as written violate plaintiffs' rights would necessarily undermine the validity of the

12 state proceedings.  We conclude that the state proceedings against plaintiffs were ongoing

13 at the time that they commenced this action.

14         For a federal court to abstain under Younger, the state proceeding must also "implicate

15 important state interests."   Hirsh, 67 F.3d at 712.  Plaintiffs contend that this prong is

16 inapplicable to their case because the statutes under which plaintiffs were charged were civil,

17 and it was "only through repeated violation and non-compliance that criminal charges were

18 brought against the [p]laintiffs."  Response at 5.  An ongoing state criminal proceeding,

19 however, implicates important state interests.  Indeed, Younger abstention was originally

20 applied to prevent federal interference with state criminal proceedings.  See Gilbertson, 381

21 F.3d at 970.  In addition, the Ninth Circuit has recognized that actions by an Arizona city to

22 enforce zoning ordinances implicate an important state interest.  In World Famous, the court

23 held that "an action, in aid of and closely related to Tempe's zoning ordinance and akin to a

24 criminal prosecution, clearly involves an important state interest" satisfying Younger's

25 second requirement.  World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d

26 1079, 1083 (9th Cir. 1987).  Thus, whether the state proceedings against plaintiffs are

27 classified as criminal or civil, they implicate an important state interest.

28

Finally, <u>Younger</u> abstention is only appropriate where litigants had an opportunity to present their federal constitutional claims in state court.  <u>Gilbertson</u>, 381 F.3d at 972. Plaintiffs contend that this prong is not met because they initially proceeded *pro se* in their state court proceedings and "did not realize that defenses and evidence not raised at the initial trial would be barred from future consideration."  <u>Response</u> at 5.  <u>Younger</u> demands "no more than an opportunity" to present constitutional claims in state court; the "plaintiff's failure to avail himself of that opportunity does not mean that the state procedures are inadequate."  <u>Gilbertson</u>, 381 F.3d at 972 (citing <u>Juidice v. Vail</u>, 430 U.S. 327, 337, 97 S. Ct. 1211, 1218 (1977)).  In cases where a litigant does not attempt to present federal claims in the state proceeding, we "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 15, 107 S. Ct. 1519, 1528 (1987).  Rather than presenting evidence that Arizona court procedures did not allow presentation of their federal claims, however, plaintiffs acknowledge that they actually raised their constitutional claims in their appeal to the state Superior Court.  In sum, plaintiffs had an adequate opportunity to present their constitutional claims in the state proceeding.

Two narrow exceptions to <u>Younger</u> abstention exist.  Abstention is inappropriate notwithstanding satisfaction of all three requirements where (1) the state proceeding is motivated by harassment or bad faith, or (2) the "challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph. . . against whomever an effort might be made to apply it.'"  <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 611, 95 S. Ct. 1200, 1212 (1975) (internal quotation omitted).  To establish bad faith, the plaintiff must show that a prosecution was commenced "without a reasonable expectation" of conviction.  <u>Baffert v. Cal. Horse Racing Bd.</u>, 332 F.3d 613, 621 (9th Cir. 2003).  Plaintiffs argue that the defendants' actions were in bad faith because plaintiffs have been threatened with multiple prosecutions for violations of the building codes.  But plaintiffs have not alleged that the City of Phoenix does not have a reasonable expectation

of obtaining conviction.  To the contrary, plaintiffs admit that they have continued to hold bible studies and worship at their residence despite the property's failure to conform to current building codes.  Plaintiffs have not shown that they meet the narrow exception of bad faith.

Similarly, plaintiffs have not established that the statutes, ordinances, and building codes in this case are "flagrantly violative. . . in every clause, sentence and paragraph" Huffman, 420 U.S. at 611, 95 S. Ct. at 1212.  Although plaintiffs argue that the codes do not define "church" or "worship," and work in concert to violate plaintiffs' religious freedoms, plaintiffs have not alleged that every clause and sentence of the challenged codes violate the constitutional rights of every person - religious or not - against whom the codes might be applied.

Because all three requirements of Younger are present and neither of the two exceptions apply, we must abstain from exercising jurisdiction.  Baffert, 332 F.3d at 617 (noting that if Younger applies, a district court "must dismiss").  Accordingly, plaintiffs' federal claims for injunctive and declaratory relief are dismissed without prejudice.

### III

We next turn to plaintiffs' § 1983 damage claims.  The Younger doctrine applies to § 1983 actions for money damages, but actions for damages should be stayed until state proceedings are finished rather than dismissed.  Gilbertson, 381 F.3d at 968.  Damage claims that are either untimely or meritless, however, do not need to be stayed.  Equity Lifestyle Props., Inc. v. County of San Juis Obispo, 548 F.3d 1184, 1196 n.23 (9th Cir. 2008).  Defendant argues that plaintiffs' § 1983 claims are untimely because they have not yet accrued under  Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).  Plaintiffs did not address this issue in their response.  Under Heck, a person seeking to recover § 1983 damages for conduct that, if unlawful, would render his conviction invalid must show that the conviction has been reversed, expunged, declared invalid, or questioned by issuance of a writ of habeas corpus.  Id. at 486-87, 114 S. Ct. at 2372.  Thus, a § 1983 action must be

dismissed as untimely if the conviction arises out of the same facts and "is fundamentally inconsistent with the unlawful behavior" for which damages are requested. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996).

In this case, an award of damages based on a finding that the ordinances under which plaintiffs were convicted were unconstitutional would render the convictions invalid. Plaintiffs have not shown that their convictions have been expunged or otherwise reversed. Thus, the § 1983 damage actions have not yet accrued under Heck. We dismiss the § 1983 damage claims without prejudice.

**IV**

Having dismissed all federal claims, we turn to plaintiffs' state law claims. Defendant argues that the effect of dismissing the federal law claims under Younger is that the court "never had original jurisdiction over those claims." Mot. to Dismiss at 8. Thus, defendant argues, we must dismiss the state law claims because no other basis for federal subject-matter jurisdiction exists. Abstention under Younger, however, "does not lead to the determination that the federal courts have no basis for jurisdiction in the first instance." Canatella v. California, 404 F.3d 1106, 1116 (9th Cir. 2005). Instead, Younger "is a doctrine under which the federal courts have bound themselves pursuant to principles of comity to voluntarily decline to exercise jurisdiction that they have and would otherwise exercise." Id. Dismissing plaintiffs' federal claims under Younger, in other words, does not divest our jurisdiction over the entire case.

Once we dismiss all claims over which we had original jurisdiction (in this case, all of plaintiffs' federal question claims), we may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). In the ordinary case where all federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343,

350 n.7, 108 S. Ct. 614, 619 n.7 (1988)).  This action is in the very early stages of discovery.  No depositions have been noticed, and the deadline for initial disclosures has just recently passed.  On balance, economy, comity, and fairness points towards declining to adjudicate plaintiffs' state law claims.  State claims are best resolved by state courts.

**V**

**IT IS ORDERED GRANTING** defendant's motion to dismiss (doc. 22).  All claims are dismissed without prejudice.  The clerk shall enter judgment.

DATED this 20th day of October, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge